993 F.2d 886
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Diane SOBKOWICZ, M.D., Defendant-Appellant.
 No. 92-15648.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1993.
Decided May 10, 1993.
 
 Before: GOODWIN, HUG, and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Diane Sobkowicz appeals the district court's grant of summary judgment to the United States in the government's action to collect treble damages for Sobkowicz's failure to perform her service obligation under the National Service Corps Scholarship Program, pursuant to 42 U.S.C. § 254l (b)(4). We affirm.
 
 BACKGROUND
 
 3
 While attending the Medical College of Pennsylvania, Sobkowicz participated in the National Health Service Corps ("NHSC") Scholarship Program. She received three years of scholarship funds, equaling $49,434, in consideration for her agreement to serve three years in the NHSC as a physician in a health manpower shortage area. After graduation, Sobkowicz sought, and obtained, a three-year deferment of her service obligation so that she could pursue a residency in internal medicine.
 
 
 4
 Upon completion of her residency, Sobkowicz was assigned to the Clinicas de Salud de Pueblo in Brawley, California, where she was to begin her three-year service obligation in July 1985. Sobkowicz refused to accept her assignment and therefore was placed in default of her NHSC service obligation. The Public Health Service ("PHS") notified Sobkowicz of her default status in a certified letter dated July 31, 1985. This letter explained that she was liable for treble damages and described the formula set forth in 42 U.S.C. § 254o (b)(1). The letter informed Sobkowicz that as of July 1985, she had incurred a debt of $258,971.49 ($148,302.00 in principal, and $110,669.49 in interest), and that her debt would come due in one year. Enclosed with the letter was a debt calculation sheet showing the interest rate that was applied to each of the scholarship payments Sobkowicz had received. Finally, the letter explained that it was Sobkowicz's responsibility to update her file if she were to change her address.
 
 
 5
 Sobkowicz did not pay her debt within the prescribed one year period. Thereafter, PHS gave Sobkowicz the opportunity to enter into a forbearance agreement whereby she could still serve her obligation instead of paying the debt, but Sobkowicz did not take advantage of the opportunity.
 
 
 6
 The record reveals that Sobkowicz subsequently changed her address without informing PHS. In 1986, the government turned over collection of Sobkowicz's debt to a collection agency, Skyline Credit Corporation ("Skyline"). Skyline successfully located Sobkowicz in Santa Barbara, but when she failed to respond to Skyline's correspondence, the matter was turned over to the Justice Department in October 1988. The U.S. Attorney's office for the Central District of California was unable to locate Sobkowicz anywhere within their jurisdiction; they ultimately returned the matter to the Public Health Service in February 1990. In 1991, PHS finally located Sobkowicz. This action was then filed in the Eastern District of California.
 
 
 7
 The district court granted the government's motion for summary judgment and awarded the government $425,695.51 in damages plus post-judgment interest at 4.21 percent. The damages figure represents the original principal of $148,302 plus $277,393.51 in interest.
 
 DISCUSSION
 I. Vagueness
 
 8
 We reject Sobkowicz's argument that 42 U.S.C. § 254o is unconstitutionally vague because it does not give students participating in the NHSC Scholarship Program adequate notice of the rate of interest that accrues under the statutory, treble damages provision, 42 U.S.C. § 254o (b)(1)(A).
 
 
 9
 Section 254o (b)(1)(A) provides, subject to certain exceptions not relevant here, that treble damages shall be assessed as damages against any NHSC scholarship participant who breaches his or her written contract "by failing ... to begin such individual's service obligation ... or to complete such service obligation." 42 U.S.C. § 254o (b)(1)(A). Section 254o (b)(1)(A) provides the following formula for determining the treble damages amount, and the following definition of terms:
 
 A = 3@ (t - s)
 
 
 t
 in which "A" is the amount the United States is entitled to recover, "@" is the sum of the amounts paid under this subpart to or on behalf of the individual and the interest on such amounts which would be payable if at the time the amounts were paid they were loans bearing interest at the maximum legal prevailing rate, as determined by the Treasurer of the United States; "t" is the total number of months in the individual's period of obligated service; and "s" is the number of months of such period served by him....
 Id. (emphasis added).
 Sobkowicz contends that the interest portion of the formula, highlighted above, is inadequately defined and therefore unconstitutionally vague. Sobkowicz emphasizes that (1) the term "maximum legal prevailing rate" is unclear; (2) it is uncertain what type of "loans" the statute is referring to (e.g., commercial loans, student loans, etc.); and (3) it is unclear when the interest begins to accrue.
 While the clause Sobkowicz highlights is certainly not a model of clear legislative drafting, it is not unconstitutionally vague. The principal inquiry of vagueness analysis is " 'whether the law affords fair warning of what is proscribed.' " Chalmers v. City of Los Angeles, 762 F.2d 753, 757-58 (9th Cir.1985) (quoting Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 503). "Government regulation must be sufficiently clear so that ordinary people can understand what conduct is being prohibited, and so that the regulation does not encourage arbitrary and discriminatory enforcement." Id. at 757 (quotations and citations omitted). The NHSC statute does provide clear warning of the conduct that is being proscribed: Scholarship participants may not default on their service obligations, either by failing to begin, or failing to complete, those service obligations. Assuming that the NHSC penalty provision is independently subject to some form of vagueness analysis, it too passes constitutional muster. As the district court held, ordinary people could be expected to determine what section 254o (b)(1)(A) means when it refers to interest "which would be payable if at the time the amounts were paid they were loans bearing interest at the maximum legal prevailing rate." Because this language is found in the context of a treble damages penalty provision, we conclude that a reasonable person of ordinary intelligence would interpret this language as the Treasurer does--to refer to the highest prevailing interest rate charged on consumer loans at the time the scholarship was awarded.
 Sobkowicz further argues that the ambiguity of section 254o (b)(1)(A)'s interest provision violates the PHS's obligation under section 254l to set forth clearly the potential damages that may be incurred. This court rejected a similar argument recently in United States v. Citrin, 972 F.2d 1044, 1050 (9th Cir.1992) (rejecting argument that damages provision in NHSC scholarship recipient's contract was ambiguous and therefore violated 42 U.S.C. § 254 l ). Section 254o (b)(1)(A)'s interest provision is "clear enough to satisfy the requirements of section 254l (c)(1)." Citrin, 972 F.2d at 1050-51.
 II. Administrative Procedures Act
 A. § 553's Notice and Comment Rulemaking Requirements
 Sobkowicz argues that the Treasurer was required to comply with the notice and comment provisions of the APA, 5 U.S.C. § 553, prior to his determination of interest rates under 42 U.S.C. § 254o (b)(1)(A) (Secretary is to determine interest rate for "loans bearing interest at the maximum legal prevailing rate"). Sobkowicz argues that the Treasurer's failure to comply with the APA renders the interest rate unenforceable. We reject this argument as well.
 The Treasurer was not required to engage in notice and comment rulemaking proceedings prior to determining the relevant interest rates under 42 U.S.C. § 254o (b)(1)(A). "Courts interpreting section 553 generally speak in terms of 'substantive' or 'legislative' rules requiring notice and comment in contrast to the exempt 'interpretive' rules of section 553(b) which do not." Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 927 (Fed.Cir.1991); see also Seldovai Native Ass'n, Inc. v. Lujan, 904 F.2d 1335, 1346-47 (9th Cir.1990). We conclude that the Treasurer legitimately fulfilled his statutory duty by sending periodic letters to PHS certifying the applicable interest rate pursuant to the Federal Reserve Board's "Interest Rates on Selected Consumer Installment Loans at Reporting Commercial Banks." This certification does not rise to the level of the creation of a "substantive rule" requiring compliance with the APA's notice and comment procedures. Congress' description of the Treasurer's interest rate determination was sufficiently concrete that substantive rulemaking by the Treasurer was not required. The Treasurer does not engage in substantive lawmaking or legislating when he certifies the relevant interest rates; as such, he was not required to initiate notice and comment rulemaking procedures under the APA. The interest rate certified by the Treasurer is purely ministerial; it merely fills in one of the figures in the formula Congress devised for determining treble damages. In Guadamuz v. Bowen, 859 F.2d 762 (9th Cir.1988), this court held that the procedure used by the Secretary of Health and Human Services of calculating Title XVI benefits prior to calculating Title II benefits for purposes of the "windfall offset" provision of the Social Security Act, 42 U.S.C. § 1320a-6, was not subject to notice and comment requirements of the APA because the procedure simply "fills in some gaps" created by Congress and "does not change any existing law or policy." Id. at 771. Similarly here, the Treasurer does not change any existing law or policy, but merely fills in some gaps created by Congress. Such action is not subject to the APA's notice and comment requirements.
 B. § 552's Publication in the Federal Register Requirement
 Sobkowicz further argues that the Treasurer's determination and certification of interest rates under section 254o (b)(1)(A) involves administrative "statements of general policy or interpretations of general applicability formulated and adopted by the agency" that must be published in the Federal Register under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(1)(D). She argues that because the interest rates were not published pursuant to FOIA, they are void and cannot be applied to her until she received actual notice of the rates in 1985.[1]
 We do not reach the question whether the interest rates here had to be published in the Federal Register because Sobkowicz "has failed to make an initial showing that [s]he was adversely affected by the lack of publication." Zaharakis v. Heckler, 744 F.2d 711, 714 (9th Cir.1984). While Sobkowicz attempted to argue at oral argument that she "would have been able to pursue an alternative course of conduct" had the interest rates been published in the Federal Register, id., the record belies such a claim. Even after she was informed of the interest rates, Sobkowicz was nonetheless obstinate in her refusal to fulfil her service obligation. There is no indication in the record that publication of the interest rate in the Federal Register would have materially affected Sobkowicz's conduct in any way. Sobkowicz was therefore not adversely affected by any failure to publish the rates in the Federal Register.
 III. Laches
 Finally, while Sobkowicz argues that the government's claims are barred by the equitable doctrine of laches, it is clearly established that a private defendant cannot assert the defense of laches against the United States. See United States v. Summerlin, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not ... subject to the defense of laches in enforcing its rights."). Sobkowicz attempts to argue that there is a current trend away from this line of authority. In United States v. Menatos, 925 F.2d 333, 335 (9th Cir.1991), however, this circuit recently relied upon Summerlin in refusing to apply the doctrine of laches against the United States in an action by the government to collect damages after the defendant had defaulted on his obligation to repay federal student loans. Therefore, Sobkowicz's argument is squarely foreclosed by this court's holding in Menatos. See also Chevron, U.S.A., Inc. v. United States, 705 F.2d 1487, 1491 (9th Cir.1983) ("The government is not bound by ... laches in enforcing its rights.").
 CONCLUSION
 If, prior to her default, Sobkowicz was sincerely concerned and uncertain as to what interest rate applied if she were to default, the record reflects that she simply could have contacted PHS for information. Instead, she refused to fulfill her service obligation regardless of the applicable interest rate, and then recklessly attempted to avoid paying the debt she consequently incurred. Although PHS repeatedly sent her notice of her mounting financial obligation, Sobkowicz chose to ignore their warnings. Even then, after Sobkowicz was undeniably aware that she would have to pay hundreds of thousands of dollars in interest on her debt, she still refused the opportunity to serve out her obligation rather than pay her way out. Despite her counsel's valiant attempts, Sobkowicz's eleventh hour legal arguments are unpersuasive.
 AFFIRMED.
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sobkowicz concedes, however, that any failure to publish the rates in no way effects the enforceability of those rates against her after she had actual notice in 1985