58 F.3d 404
 40 Cont.Cas.Fed. (CCH) P 76,790
 UNITED STATES, ex rel., Plaintiff-Appellee,
and
Ara B. Papazian, and Nabil D. Hanna, Plaintiffs-Appellants,
v.
AMERICAN PRODUCTION INDUSTRIES, INC., dba Paramount Citrus
Association, fka Paramount Citrus Association;
Mohammed Ali Karbalai; Elvin Wood, Defendants.
 No. 93-56672.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 1, 1995.
Decided June 9, 1995.
 
 Hebert Hafif, Claremont, CA, and Phillip E. Benson, Newport Beach, CA, for plaintiffs-appellants.
 Douglas N. Letter and Phillip A. Shaikun, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Ara Papazian and Nabil Hanna ("relators") appeal from the district court's dismissal of their qui tam complaint brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. Sec. 3729 et seq. On appeal the relators argue that the district court erred by finding that it lacked jurisdiction over the suit because a settlement had previously been agreed to by the Department of Justice ("DoJ") and certain of the defendants. Because the relators lack standing under the DoJ regulations to challenge the settlements, we affirm.FACTS AND PRIOR PROCEEDINGS
 
 
 2
 In April 1991, Papazian and Hanna met with Agent Stephen Johanson of the Defense Criminal Investigative Service to discuss information concerning the adulteration of juice products which were being sold to the Government. Papazian and Hanna told Agent Johanson that they were coming forward with the information because they feared criminal prosecution and loss of their jobs. Agent Johanson began an investigation, and in September 1991, the U.S. Attorney's Office accepted the case for criminal prosecution. On April 29, 1992, Agent Johanson learned that at some future time Papazian and Hanna intended to file a qui tam action. However, Agent Johanson never discussed when, if at all, the appropriate time was to file a qui tam complaint and never made any representation that the Government would refrain from pursuing a civil settlement without first notifying them or their counsel.
 
 
 3
 In March of 1992, at the suggestion of counsel for Paramount, negotiations began for a settlement of criminal and civil liability against Karbalai and Paramount. On June 12, 1992, two settlement agreements were reached. Karbalai agreed to pay $900,000, and Paramount agreed to pay $6 million. The agreements were authorized for the United States by Michael F. Hertz, Director of the Commercial Litigation Branch of the Department of Justice ("Director Hertz"), and executed pursuant to the authorization by Assistant United States Attorney, John N. Joseph ("AUSA Joseph"). After reading about the settlements in the newspaper, Papazian and Hanna filed their qui tam action.
 
 
 4
 A prerequisite to awarding a qui tam relator a share of the proceeds of any settlement or claim is that the relator must bring a timely complaint under the FCA. See 31 U.S.C. Secs. 3730(d)(1)-(2). This element was lacking here. Consequently, the Government suggested partial dismissal based on the prior settlement of most of the relators' claims.[1] In response, the relators alleged that the Government had defrauded them by making false representations that it would not pursue a civil settlement and by breaching a promise to tell them when to file their qui tam action. After supplemental briefings, the district court found that the relators' claims of fraud were without basis. It concluded that the FCA does not require the Government to assist potential relators in filing their complaints, and found that the Government had made no false representations or promises. The district court then ordered a partial dismissal of the complaint.
 
 
 5
 In response, the relators moved the court to set aside its order of dismissal, arguing that the settlement agreements were void because they had not been properly authorized under DoJ regulations. See 28 C.F.R. Sec. 0.160 et seq. The district court denied this motion, concluding that the settlements were properly authorized by Director Hertz and executed by AUSA Joseph without deciding whether the relators had standing to make such a claim.
 
 
 6
 The parties stipulated that the remaining claims were dismissed without prejudice. On November 22, 1993, the district court entered final judgment. On December 14, 1993, the relators filed a timely appeal.
 
 JURISDICTION
 
 7
 Federal question jurisdiction in the district court was based on the FCA. 31 U.S.C. Secs. 3730, 3732(a). The central issue before this court is whether settlement agreements between the United States and certain of the defendants deprived the district court of jurisdiction over the relators' claims based on the FCA. On February 18, 1993, the district court ordered partial dismissal of the complaint based on the preclusive effect of the settlement agreements. On November 22, 1993, based on a stipulation by the parties to dismiss the remaining claims, the district court entered final judgment on all claims. We have jurisdiction over the relators' timely appeal pursuant to 28 U.S.C. Sec. 1291.
 
 STANDARDS OF REVIEW
 
 8
 The decision of the district court involved mixed questions of law and fact, which are subject to de novo review. United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court's factual findings are reviewed for clear error. Id.
 
 DISCUSSION
 I. STANDING
 
 9
 The Government argues that the district court's decision can be upheld on the ground that the relators lack standing under DoJ regulations that authorize subordinate DoJ officials to compromise claims to challenge the validity of the settlement agreements.[2] We agree.
 
 A.
 
 10
 The Attorney General ("AG") has power to conduct all litigation on behalf of the United States, its agencies, and its officers, unless otherwise provided by law. See 28 U.S.C. Sec. 519 (1988). The AG also has authority under 28 U.S.C. Sec. 510 to promulgate regulations delegating her settlement authority to subordinate DoJ officials. The AG has exercised this authority by issuing regulations and directives which permit DoJ officials to compromise claims, subject to monetary limits. 28 C.F.R. Secs. 0.160-0.172 (1991). These regulations also provide notice to persons who contract with the Government, who bear the risk that government officials are acting within the scope of their authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). The relators base their claim that the contracts are void on the DoJ's alleged failure to adhere to its own regulations concerning authority to settle claims.[3]
 
 B.
 
 11
 The DoJ regulations delegating the AG's authority to compromise claims do not create a right of action for relators to challenge the validity of settlement agreements. Only regulations having the "force and effect of law" can create a private right of action. Chrysler Corp. v. Brown, 441 U.S. 281, 295-303, 99 S.Ct. 1705, 1714-18, 60 L.Ed.2d 208 (1979). In contrast, "rules of agency organization, procedure, or practice"--sometimes called "interpretive rules"--do not create enforceable rights. 5 U.S.C. Secs. 553(b), 553(d); Chrysler, 441 U.S. at 315, 99 S.Ct. at 1724; see also Guadamuz v. Bowen, 859 F.2d 762, 771 (9th Cir.1988) ("[I]nterpretive rules express an agency's ... internal house-keeping measures organizing Agency activities.").
 
 
 12
 The regulations at issue here fall into this latter category for a number of reasons. First, the statutory authority for the regulations, 5 U.S.C. Sec. 301, has been deemed by the Supreme Court to be a "housekeeping statute." Chrysler, 441 U.S. at 310, 99 S.Ct. at 1721-22. Second, the title of Part O regulations--"Organization of the Department of Justice"--indicates that they are aimed at agency organization. Third, these DoJ regulations are not required to be promulgated under the Administrative Procedure Act's formal notice and comment procedures, as are substantive rules. See 5 U.S.C. Sec. 553(b)(3)(A); Chrysler, 441 U.S. at 313, 99 S.Ct. at 1723; Guadamuz, 859 F.2d at 762. Finally, the descriptions of these rules in the Federal Register indicate that they are "interpretive" in nature. The delegation of compromise authority to Branch Directors is "related to agency organization and management." 56 Fed.Reg. 12666 (1991) (emphasis added).
 
 
 13
 Because these DoJ regulations are interpretive rules, they do not create a private right of action for private parties to challenge DoJ contracts.
 
 C.
 
 14
 There is a single exception to this general rule. Where a contracting party reasonably relies on an authorizing regulation, the Government may be estopped from voiding the contract. See, e.g., United States v. McInnes, 556 F.2d 436, 440-41 (9th Cir.1977). However, this exception does not establish standing for the relators for two reasons. First and most obviously, the relators are not contracting parties; they are strangers to the contract. Second, the relators have not reasonably relied on the regulations to their detriment. Although the relators asserted before the district court that they relied to their detriment on misrepresentations by the Government concerning promises made to warn them when to file their qui tam suit, this is not the sort of reliance necessary to establish standing to challenge the validity of the settlement agreements. Most importantly, the relators' claims of misrepresentation were found to be without basis by the district court, and those findings are not challenged on appeal. Moreover, even if their claims of misrepresentation were sustainable before this court, the relators' reliance would have been on the Government's representations prior to its authorization of the settlement agreements and not on the DoJ's authorizing regulations, which underlie the claims here.
 
 
 15
 In sum, the relators' claim that the DoJ internal rules permit them to challenge the settlement agreements is without basis. Accordingly, we affirm the district court's decision because the relators lacked standing to challenge the validity of the settlement agreements.
 
 II. VALIDITY OF AGREEMENT
 
 16
 Because we rest our decision on the lack of standing, we do not reach the question of whether the settlement agreements were properly authorized under the DoJ's rules and regulations.
 
 CONCLUSION
 
 17
 The relators lacked standing under the DoJ's internal regulations to challenge the settlement agreements. Accordingly, we affirm the district court's dismissal of the relators' claims.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The Government did not suggest dismissal of the entire qui tam action because the complaint alleged adulteration before 1985 and included Elvin Wood as a defendant, and thereby fell outside the scope of the settlement agreements
 
 
 [2]
 Although the district court did not reach this issue, resting its decision instead on the ground that the agreements were valid, we can affirm the district court on any basis supported by the record. United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993)
 
 
 [3]
 The relators also argue that their standing to challenge the settlements is based on the FCA and not the DoJ regulations. However, this argument begs the question. The issue here is whether the FCA has been properly invoked as a basis for jurisdiction. Consequently, the relators cannot rely on it