**BETHLEHEM STEEL CORPORATION, Plaintiff,**

v.

**George BUSH, in his capacity as President of the United States of America; William Reilly, in his capacity as Administrator of the United States Environmental Protection Agency; and the United States Environmental Protection Agency,* Defendants.**

Civ. No. H88–296.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 7, 1989.

---

* Pursuant to Fed.R.Civ.P. 25(d)(1), we substitute the names "George Bush" and "William Reilly", successors to the original defendants.

Bryan G. Tabler, Joan M. Heinz and Barbara A. Fruehling, Barnes & Thornburg, Indianapolis, Ind., and Charles Sweeney, Barnes & Thornburg, South Bend, Ind., for plaintiff.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., and Robert Lefevre, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## ORDER

LOZANO, District Judge.

The plaintiff, Bethlehem Steel Corporation ("Bethlehem"), brings this action pursuant to Section 106(b)(2) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9606(b)(2). Bethlehem seeks reimbursement from the Hazardous Substance Response Fund (commonly called the "Superfund") for funds expended in complying with administrative orders issued by the United States Environmental Protection Agency ("EPA").

This action is before the Court on the EPA's Motion to Dismiss, which was filed September 8, 1988. While this is a case of first impression in this District, this Court has been guided in its decision by *Gary Steel Supply Co. v. Reagan*, 711 F.Supp. 471 (N.D.Ill.1989), decided April 24, 1989, which is factually almost indistinct. (EPA's denial of Petition for Reimbursement for funds expended complying with an order received prior to effective date of amendment upheld.) For the reasons set forth below, the EPA's Motion to Dismiss is GRANTED.[1]

FACTS

For some time prior to September, 1985, Bethlehem sold spent pickle liquor [2] to the Conservation Chemical Company of Illinois, Inc. (CCCI). Between April 1, 1981 and September, 1985, these sales were conducted pursuant to an Agreement dated April 1, 1981. The Agreement specified a sale price of 0.035 cents to 0.04 cents per gallon for the spent pickle liquor, and provided that it would be loaded into CCCI's tank

---

1. The following motions are also before the Court: Bethlehem's Motion requesting oral argument on its memorandum in opposition to the EPA's Motion to Dismiss, filed October 25, 1988; and the EPA's for Reconsideration of an Order Denying a Previous Motion for Stay of Discovery, filed May 23, 1989. These Motions are rendered moot by the dismissal of this case.

2. Bethlehem uses hydrochloric acid at its Burns Harbor, Indiana plant for removing mill scale and corrosion deposits in certain processing of steel products. "Pickle liquor" is a liquid by-product resulting from the finishing process.

trucks at Bethlehem's Burns Harbor, Indiana plant, at which point the title and risk of loss passed to CCCI. CCCI transported the spent pickle liquor to its Gary, Indiana facility, where it was processed into ferric chloride. Bethlehem never delivered spent pickle liquor to CCCI at the Gary site, nor transported, nor arranged for the transportation of the spent pickle liquor it sold to CCCI, and the spent pickle liquor only changed hands at Bethlehem's Burns Harbor plant.

The EPA, along with CCCI and the Gary Airport Authority,[3] investigated the conditions at CCCI's Gary facility, and found numerous tanks and drums, many of which were severely corroded and showed signs of past and present leakage. The hazardous substances at the facility included cyanide-bearing liquids; oils, tars, and sludge contaminated with polychlorinated biphenyl (PCB); silica tetrachloride; and water and soil contaminated or mixed with the above substances.

On September 27, 1985, the EPA issued an administrative order requiring CCCI, Bethlehem, and seventeen other companies known to have conducted business with CCCI, to undertake emergency measures to remove the hazardous substances from CCCI's Gary site. Bethlehem and the seventeen other parties were named in the Order because all of the hazardous materials had been co-mingled into an indivisible mixture. The EPA therefore held each of these parties potentially responsible for the presence of these substances at the site, for the past, present and threat of future release of these substances into the environment, and for the cleanup necessary to abate the hazard.

On October 9, 1985, the EPA met with CCCI, Bethlehem and the other companies named in the Order. As a result of this meeting, the EPA reissued the Order on November 25, 1985, with an amended course of action and an extended time schedule. The Order, as modified, was deemed by the EPA to be effective as of October 18, 1985.

After the meeting with the EPA, Bethlehem formed a group with thirteen of the other parties named in the Order (the "Group"). On October 17, 1985, in response to the Order, the Group sent a letter to the EPA in which the Group indicated that it intended to comply with the Order. The letter included a proposed plan for compliance and specified that this was not and was not to be deemed an admission of liability nor a waiver of any legal or equitable defense any of the Group may have had.

One year later, on October 17, 1986, SARA became effective. As of that date, 42 U.S.C. § 9606(b)(1) provided:

(1) Any person who, without sufficient cause, wilfully violates, or fails or refuses to comply with, any order of the President under Subsection (a) of this section may, in an action brought in the appropriate United States District Court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs, or such failure to comply continues.

(2)(A) Any person who receives and complies with the terms of any order issued under Subsection (a) of this section may, within sixty (60) days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest.

(B) If the President refuses to grant all or part of a petition made under this paragraph, the Petitioner may, within thirty (30) days of receipt of such refusal, file an action against the President in the appropriate United States District Court seeking reimbursement for the Fund.

(C) Except as provided in sub-paragraph (D), to obtain reimbursement, the petitioner shall establish by preponderance of the evidence that it is not liable for response costs under Section 9607(a) or this Title and that costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order.

---

**3.** CCCI's Gary facility is located near the entrance to the Gary Municipal Airport.

On March 16, 1987, the Group submitted to the EPA a proposed plan for cleanup procedures to be implemented at the Gary CCCI site. The EPA approved the plan on April 30, 1987. The Group began cleanup work in accordance with the plan on June 8, 1987, and this work was completed on February 24, 1988.

On March 4, 1988, Bethlehem petitioned defendants for reimbursement under Section 106(b)(2)(A) of CERCLA, 42 U.S.C. § 9606(b)(2)(A) for its compliance costs, which totalled $301,300.00. Bethlehem alleged that it was not liable because it had not made arrangements nor agreements for the storage, treatment, or disposal of materials at the Gary CCCI site, and Bethlehem further alleged that it was not liable as an owner of the facility or as a transporter. 42 U.S.C. § 9607. The EPA denied the petition in a letter received by Bethlehem dated May 10, 1988. In its letter, the EPA stated that the basis for the denial was that "Section 106(b) does not apply to parties who received Section 106(a) orders prior to the date of enactment of (SARA)" as "providing reimbursement would require the retroactive application of Section 106(b)." Bethlehem filed this action on June 16, 1988.

The EPA has moved for dismissal on the same ground upon which it based its denial of Bethlehem's petition. Bethlehem argues that the plain language of the Statute and its legislative history authorized the reimbursement of Bethlehem's expenses; that reimbursement would not constitute retroactive application of the Statute; and that even if it were retroactive application, Section 106(b) is procedural in nature and supports such an application. For the reasons set forth below, this Court finds the argument set forth by the EPA to be more persuasive, and GRANTS the Motion to Dismiss.

ANALYSIS

In ruling on a Rule 12(b)(6) Motion to Dismiss, this Court must follow

the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)

This Court must accept "all allegations in the Complaint as true." *Collins v. County of Kendall, Ill.,* 807 F.2d 95, 99 (7th Cir. 1986). See also: *Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59, 65 (1984); and *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). In order to prevail, the defendants "must demonstrate that the plaintiff's claim, as set forth by the Complaint, is without legal consequence." *Gomez,* 811 F.2d at 1039.

Bethlehem brings this action under Section 106(b)(2) of CERCLA, 42 U.S.C. § 9606(b)(2), and the defendants have moved to dismiss this action, arguing lack of subject matter jurisdiction and, in the alternative, that there exists no set of facts on which Bethlehem can state a claim for which relief can be granted. In that Bethlehem's Petition for Reimbursement of Funds expended in cleaning up the Gary CCCI site was denied, and Gary, Indiana is within the geographical confines of this district, we note jurisdiction pursuant to 42 U.S.C. § 9606(b)(2)(B). In ruling on defendants' other argument, whether a set of facts exists on which Bethlehem could state a claim for which relief can be granted, this Court notes, as the District Court noted in *Gary Steel,* that the primary issue raised by the defendants' Motion is one of statutory interpretation. 711 F.Supp. at 473.

■ The focal point of this statutory interpretation is 42 U.S.C. § 9606(b)(2)(A), which provides in relevant part:

Any person who *receives and complies* with the terms of any order issued under Subsection (a) of this section may ... petition ... for reimbursement ... (emphasis added).

Clearly, a person who can establish nonliability can petition for reimbursement of reasonable expenses incurred while complying with an order received after October 17, 1986. 42 U.S.C. § 9606(b)(2). Congress

has made no clear statement authorizing retroactive application of this provision. Therefore, Congress clearly did not intend to permit those who had completed cleanup prior to October 17, 1986 to petition for reimbursement. What is not clear is whether Congress intended to permit those who had received orders and were in the process of cleaning up on October 17, 1986 to petition for reimbursement when cleanup was complete.

The gap that is created by Congress' failure to specify what is intended for this group of persons is broadened by the vagueness of the verb "complies". This Court agrees with *Gary Steel* that agreeing to comply and actively complying are separate activities, and likewise finds that the situation in this case at the time the amendment occurred was that Bethlehem had received the order and was in the process of complying with it. The facts of this case therefore place Bethlehem within the gap between the two extremes.

■ When the Court is called upon to review an agency's construction of a Statute that agency is called upon to administer and Congress has not clearly expressed its intent, the question for the Court is whether the agency's answer is based on a permissible construction of the Statute. *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The Court need not conclude that the agency's construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the Court would have reached if the question had initially arisen in a judicial proceeding. 467 U.S. at 843, n. 11, 104 S.Ct. at 2782, n. 11 citing *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981); *Zenith Radio Corp. v. U.S.*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); *McLaren v. Fleischer*, 256 U.S. 477, 480–81, 41 S.Ct. 577, 577–78, 65 L.Ed. 1052 (1921).

■ It is not for the Court to impose its own construction of the Statute, for it is the agency that is charged with administering the Congressionally created program and that necessarily requires forming policies and making rules to fill gaps Congress implicitly or explicitly leaves. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781, citing *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). As the Supreme Court stated in *Chevron:*

If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a Court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

467 U.S. at 843–44, 104 S.Ct. at 2782.

■ This principle of deference to an executive department's construction of a statutory scheme it is entrusted to administer has been consistently followed whenever construing the statute involved reconciling competing policies. *Chevron*, 467 U.S. at 844–45, 104 S.Ct. at 2782–83, citing *National Broadcasting Co. v. U.S.*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); *Labor Board v. Hearst Publications, Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *Republic Aviation Corp. v. Labor Board*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *Labor Board v. 7–Up Bottling Co.*, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). If the administrative agency has made a decision which represents a reasonable accommodation of conflicting policies, the Court should not disturb that decision

unless it appears from the Statute or its legislative history that Congress would not have sanctioned it. *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783, citing *U.S. v. Shimer,* 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), accord *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699–700, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).

■ The EPA has construed "receives and complies" to limit the application of the amendment to those who both received the order and complied with it after the effective date of the amendment. Since Congress' intent is not clear, the role of this Court in reviewing this construction is limited to deciding whether the EPA's position is reasonable. In doing so, this Court must look to the legislation's history for guidance. Defendants argue, as they did in *Gary Steel* and in *Wagner Seed Co., Inc. v. Bush,* 709 F.Supp. 249 (D.C.1989), decided April 4, 1989, that there is no ambiguity regarding Congressional intent toward cleanups in progress when Section 106(b)(2) was enacted, because Congress has often specified when claims may be made under CERCLA for funds expended in the past. See, e.g. 42 U.S.C. § 9604(c)(5)(C) (credit may be extended to states that expended funds "after January 1, 1978, and before December 11, 1980"). This Court agrees with *Wagner Seed* that while this argument may weigh in defendants' favor, it is predicated on the *absence* of specification and is not conclusive evidence that Congress intended to exclude those in the process of cleanup on October 17, 1986. 709 F.Supp. at 251.

The legislative history of the Amendment supports the EPA's construction. As the Court noted in *Gary Steel:*

> We further note that this construction is supported by the Amendment's legislative history. Representative Dennis Eckart, who sponsored H.R. 2005, the bill that eventually became SARA, stated that: "This new provision is intended to provide incentives for parties to undertake the work required in the Order, even if they have legal objections to performing the work. Thus, effective after the date of enactment of these amendments, a party who receives an order can begin work of environmental cleanup while preserving its right to raise objections in a subsequent proceeding." 132 Cong. Rec. H9624 (daily ed. October 8, 1986).

711 F.Supp. at 474. See, H.R.Rep. No. 253, 99th Cong., 1st Sess. Pt.I, 139–140 (1985), U.S.Code Cong. & Admin.News 1986, 2835, 2921–2922 (Statement of EPA administrator that a chief purpose of the provision was to provide such incentives). As in *Wagner Seed,* this Court is hesitant to infer the intent of Congress from the statement of "a single representative on the floor of the house," but Representative Eckart was the sponsor of the bill that eventually became the law, and the EPA's construction is supported by this portion of the Amendment's legislative history. 709 F.Supp. at 251, n. 2.

■ Defendants acknowledge that the statutory scheme of CERCLA is remedial in nature and generally retroactive, but argue that SARA creates new rights separate from CERCLA's liability scheme, which should be treated differently. See defendants' Memorandum in Support of defendants' Motion to Dismiss the Complaint, filed September 8, 1988 ("Memorandum"), p. 14, n. 3, citing *U.S. v. Shell Oil Co.,* 605 F.Supp. 1064, 1075–76 (D.Colo.1985); *U.S. v. Northeastern Pharmaceutical Chemical Co.,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). We agree with the defendants and with the *Gary Steel* Court that the creation of an entirely new cause of action and right to recover from the United States after cleanup has been completed creates a new cause of action and it is, at least in part, a substantive change in the law. 711 F.Supp. at 474. In that Congress has made no statement of intent that is clear to this Court that the SARA provisions are to be retroactively applied, and since the changes appear to be substantive, at least in part, the distinction between CERCLA's focus on liability and SARA's creation of new rights for the non-liable supports the defendants' construction of the Statute. Legislative enactments effecting substantive rights and liabilities are

presumed to be prospective absent clear statements by Congress to the contrary. *Gary Steel*, 711 F.Supp. at 474, citing *U.S. v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235 (1982); *U.S. v. Kairys*, 782 F.2d 1374, 1381 (7th Cir.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986).

■ While this Court does not agree with the defendants that reimbursing Bethlehem's reasonable costs would constitute retroactive application of the Statute,[4] this Court does agree that the Amendment constitutes a waiver of sovereign immunity to be construed narrowly, and both the legislative history of the amendment and case law support this. As defendants note, the House Committee on Energy and Commerce specified that the new right to petition for reimbursement is not rooted in the Federal Tort Claims Act, but rather, "it is a specific waiver of sovereign immunity for non-liable recipients of Section 106 orders ..." House Rep. No. 253, 99th Cong. 1st Sess. 83, 1985, U.S.Code Cong. & Admin. News 1986, p. 2865. Furthermore, the source of the funds for reimbursement is the Superfund, a trust fund established in the United States Treasury and all suits to take money from the public treasury implicate sovereign immunity. See, 26 U.S.C. § 9507(a); *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Wagner Seed*, 709 F.Supp. at 251.

In that the Amendment, which is in part ambiguous, permits suit for reimbursement from the Superfund, it is also subject to the usual rule that ambiguities concerning such waivers are to be strictly construed in favor of the Government. See, *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *Dugan*, 372 U.S. at 620, 83 S.Ct. at 1006; *Gary Steel*, 711 F.Supp. at 474; *Wagner*

*Seed*, 709 F.Supp. at 251. The EPA's construction of the Statute is consistent with this judicial rule and this Court must defer to it if it appears to be a reasonable interpretation of an ambiguous statute, even if the Court's interpretation is different. *Chevron*, 467 U.S. at 842–45, 104 S.Ct. at 2781–83; *Gary Steel*, 711 F.Supp. at 474; *Wagner Seed*, 709 F.Supp at 252.

Congress intentionally created incentives for companies to undertake cleanup and comply with EPA orders. In doing so, some of these companies incurred expenses they might not otherwise be liable for. These incentives are embodied in an ambiguous reimbursement provision which the EPA is charged with administering. In construing this provision, the EPA had to balance competing policies. On the one hand is the policy of creating incentives which induce companies to incur expenses on the expectation of being reimbursed from the public treasury, and on the other is the policy of favoring optimal allocation of limited federal funds.

Prior to the effective date of the Amendment, Bethlehem had already received an EPA order and had begun compliance by hiring a consultant to devise a cleanup plan. Had Bethlehem wished to assert its claim that it was not a liable party under § 9607, it could have refused to comply with the order of 1985. The EPA would then have brought an enforcement action, and Bethlehem could have asserted as a defense the claims forming the basis for this suit. So long as Bethlehem could demonstrate sufficient cause for its refusal to comply with the EPA order, no fines would have been assessed against Bethlehem. 42 U.S.C. § 9607(c)(3).

In this case, as in *Wagner Seed* and in *Gary Steel*, the EPA contended with competing policies in construing the ambiguous provision. While the incentive created by the Amendment could have had some ef-

---

4. This Court agrees with the *Wagner Seed* Court on this point. While applying Section 106(b)(2) would reimburse Bethlehem in part for funds expended before the amendment became law, Bethlehem was not entitled to a Petition for Reimbursement until cleanup was completed, which was after their reimbursement section

was enacted. See, e.g. *Reynolds v. U.S.*, 292 U.S. 443, 448–49, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934) (statute not allowing veterans to be charged for expenses incurred in part before Statute went into effect held not to be retroactive).

fect on those who, like Bethlehem, were in the process of compliance when the Amendment became effective, it was neither arbitrary nor capricious of the EPA to treat all of those who had received orders and were complying with them at the time the Amendment became effective differently from those who received the orders after the Amendment became effective. This construction of the reimbursement provision is a reasonable interpretation of an ambiguous statute and is consistent with the legislative history of that provision and established principles of law. Accordingly, this Court defers to it.

Based on the foregoing, the defendants' Motion to Dismiss is GRANTED. This case is DISMISSED WITH PREJUDICE.