**BETHLEHEM STEEL CORPORATION,**
Plaintiff–Appellant,

v.

**George BUSH, in his capacity as President of the United States of America; William K. Reilly, in his capacity as Administrator of the United States Environmental Protection Agency; and the United States Environmental Protection Agency, Defendants–Appellees.**

No. 89–3411.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1990.

Decided Nov. 28, 1990.

Bryan G. Tabler, Barbara A. Fruehling, Mark E. Shere, Joan M. Heinz, Barnes & Thornburg, Indianapolis, Ind., for plaintiff-appellant.

Roger J. Marzulla, Asst. Atty. Gen., David C. Shilton and William B. Lazarus, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Mary L. Fulghum, E.P.A., Region 5, Office of Regional Counsel, Chicago, Ill., Joseph Freedman, E.P.A., Washington, D.C., Robert Lefevre, Dept. of Justice, Environmental Defense Section, Washington, D.C., for defendants-appellees.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Bethlehem Steel Corporation brought this action to recover money it expended as part of a Superfund cleanup. The district court granted the government's motion to dismiss with prejudice. 736 F.Supp. 945. Bethlehem appealed. We now affirm the judgment of the district court.

## I

## BACKGROUND

### A. *The Administrative Structure*

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) was enacted in response to the growing hazardous waste problem in this country and to the recognition that the previous statute, the Resource Conservation and Recovery Act of 1976 (RCRA), was not adequate to deal with that problem. CERCLA gave the Environmental Protection Agency (EPA) the power either to take direct response action to clean up a site and later seek reimbursement from the polluters, or to require the "responsible parties" to conduct a cleanup. 42 U.S.C. § 9604(a). To fund the direct response actions, Congress established in the United States Treasury a Hazardous Substance Trust Fund (commonly referred to as "Superfund"). 26 U.S.C. § 9507(a).

Under CERCLA, if a party conducted a cleanup despite disclaiming liability, there was no action available to recover the expended funds from the Superfund if its nonliability was established later. In part to encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a later time, Congress amended CERCLA in 1985. The amendment, called the Superfund Amendment and Reauthorization Act (SARA), became effective on October 17, 1986. One of its provisions gives to any party that "receives and complies" with a cleanup order the right to petition for reimbursement. The full text of the pertinent subsection reads as follows:

> Any person who receives and complies with the terms of any order issued under subsection (a) of this section may, within 60 days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest.

42 U.S.C. § 9606(b)(2)(A).

### B. *Facts*

As part of Bethlehem Steel Corporation's (Bethlehem) operation in Burns Harbor, Indiana, it produces a liquid waste by-product called "spent pickle liquor." Prior to September 1985, Bethlehem sold the spent pickle liquor to Conservation Chemical Company of Illinois, Inc. (CCCI), which would pick up the liquid at Bethlehem's facility and transport it to CCCI's facility in Gary, Indiana.

The EPA conducted an investigation of CCCI's facility and determined that toxic

materials had leaked out of various containers. On September 27, 1985, the EPA issued an administrative order to clean up CCCI's Gary facility and named Bethlehem, CCCI, and seventeen other companies as potentially responsible parties. Bethlehem and thirteen of the other companies formed a group to clean up the facility. In a letter to the EPA dated October 17, 1985, the group denied liability, but indicated that it would comply with a revised administrative order.[1] On November 25, 1985, the EPA issued a revised administrative order, which had an effective date of October 18, 1985. SARA became effective on October 17, 1986.

The group submitted a proposed cleanup plan to the EPA in March 1987, and the EPA approved the plan on April 30, 1987. The cleanup work began on June 8, 1987, and was completed on February 24, 1988. Two weeks following the cleanup, Bethlehem requested reimbursement of its cleanup costs (about $300,000) pursuant to section 9606. The EPA denied the request on May 10, 1988, on the ground that reimbursement would be a retroactive application of SARA.

### C. District Court Opinion

The district court began by identifying the "gap" in the structure of section 9606 in which Bethlehem's situation fell. If Bethlehem had completed the cleanup *before* October 17, 1986, it would be ineligible for reimbursement because the statute was not to be applied retroactively. *See Bethlehem Steel Corp. v. Bush,* 736 F.Supp. 945, 948–49 (N.D.Ind.1989). But the court noted that the statute made the result unclear when a company was *"in the process"* of complying with a cleanup order on October 17, 1986. *Id.* at 949 (emphasis supplied).

In determining the proper interpretation of the statute to address this gap, the court relied upon *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The district court determined that, under *Chev-*

*ron,* a court must accept an agency's interpretation of a statute it administers, provided that interpretation is based on a permissible construction of the statute. 736 F.Supp. at 949. "Since Congress' intent is not clear, the role of this Court in reviewing this construction is limited to deciding whether the EPA's position is reasonable." *Id.* at 950.

In determining whether the EPA's interpretation of the statute was "a reasonable accommodation of conflicting policies," *Id.* at 949 (paraphrasing *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2783), the district court first examined the statutory text. The court noted that, given Congress' experience with CERCLA, it easily could have specified that provisions in SARA covered parties in Bethlehem's position. However, agreeing with the court in *Wagner Seed Co. v. Bush,* 709 F.Supp. 249 (D.D.C.1989), the district court concluded that, "while this argument may weigh in defendant's favor, it is predicated on the *absence* of specification and is not conclusive evidence that Congress intended to exclude those in the process of cleanup on October 17, 1986." 736 F.Supp. at 950 (emphasis in original).

The district court then turned to the available legislative history, the sparse case law, and the applicable canons of statutory interpretation. It concluded that there was a reasonable basis for the interpretation of the EPA. With respect to the legislative history, the district court, noting its agreement with the court in *Gary Steel Supply Co. v. Reagan,* 711 F.Supp. 471 (N.D.Ill.1989), found some, although not conclusive, support for the EPA's position in the statement of the legislation's sponsor. 736 F.Supp. at 950.

The court next addressed the argument that SARA ought to be considered a new cause of action and, therefore, not applied retroactively absent a clear statement from Congress that it intended such an application. The district court declined to characterize Bethlehem's reading of the statute

---

1. There was a meeting on October 9, 1985, between the potentially responsible parties and the EPA to discuss the cleanup order. The parties agreed on a "Phase I" plan encompassing eight steps, and the EPA was to issue a revised cleanup order to reflect these changes.

as requiring, strictly speaking, "retroactive" application of the statute. Relying explicitly on *Wagner Seed*, the district court reasoned that, while application of the statute to Bethlehem would compensate the corporation for some expenditures made before the effective date of SARA, Bethlehem was not entitled to reimbursement until the cleanup was complete—a date admittedly after the effective date of SARA. *Id.* at 951.

Although declining to characterize the statute as retroactive, the court did believe that SARA created a new right to petition for reimbursement that constituted a waiver of sovereign immunity and, consequently, ought to be construed narrowly. The EPA's construction of the statute, concluded the court, is consistent with the judicial rule that ambiguities concerning waivers of sovereign immunity are to be strictly construed in favor of the government. *Id.*

Lastly, the district court examined whether the EPA's reading of the statute was consonant with the manifest legislative intent to encourage voluntary private cleanup action. Like the court in *Wagner Seed*, the court determined that application of the provision in question to SARA "could have had some effect on those who, like Bethlehem, were in the process of compliance." *Id.* at 951–52. Nevertheless, it concluded that "it was neither arbitrary nor capricious of the EPA to treat all of those who had received orders and were complying with them at the time the Amendment became effective differently from those who received the orders after the Amendment became effective." *Id.* at 952.

## II

## ANALYSIS

A. *Standard of Review*

■ The district court granted the EPA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We review a Rule 12(b)(6) dismissal *de novo*. *See Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989). A party fails to state a claim upon which relief may be granted only if

that party "can prove no set of facts upon which relief may be granted." *First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775, 776 (7th Cir.1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). We assume well-pleaded allegations are true and shall draw all reasonable inferences in the light most favorable to the plaintiff. *See Infinity Broadcasting v. Prudential Ins. Co.*, 869 F.2d 1073, 1075 (7th Cir.1989). Therefore, our task is to determine whether Bethlehem's allegations can be reasonably construed to justify relief under SARA.

B. *Construction of SARA under Chevron*

1.

■ This is a case of statutory interpretation. The methodology we must follow is well established. Our starting point must be the language of the statute. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 56, 108 S.Ct. 376, 380–81, 98 L.Ed.2d 306 (1987). If the statute is unambiguous, our inquiry is at an end; the congressional intent embodied in that plain wording must be enforced. *See United States v. Clark*, 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982). Here, the EPA submits that the statute is unambiguous:

> Significantly, the relevant statutory terms are phrased in the present tense, indicating that Congress did not intend that those who had already received an order prior to SARA's enactment would be eligible to seek reimbursement. Here, it is undisputed that Bethlehem Steel had already *received* an order and was in the process of complying with that order at the time the amendment was enacted. The plain and ordinary use of the word "and" signifies that the amendment applies only to those who both receive the order *and* comply with it after the effective date of the amendment.

Appellant's Br. at 23 (emphasis in original).

We must acknowledge that there is some force in this argument. Nevertheless,

while the question is somewhat close, we believe that, on balance, the district court, like the other courts that have addressed the issue,[2] properly determined that, as applied to an entity that was in the process of cleaning up at the time of SARA's enactment, there is an ambiguity in the statutory language.

### 2.

When a syntactical analysis of the statutory language does not yield a satisfactory answer with respect to the intent of the Congress, we must employ other less satisfactory means to ascertain, as best we can, the legislative will. Our starting point on this journey is well established. The judiciary has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see also United States v. Riverside Bayview Homes*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985); *Chemical Mfrs. Ass'n v. Natural Resources Defense*

*Council*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). The agency's action should be upheld, absent proof of contrary legislative intention, when the action is " 'a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.' " *Chevron*, 467 U.S. at 845, 104 S.Ct. at 2783 (quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.2d 908 (1961)); *see also United States v. Baxter Healthcare Corp.*, 901 F.2d 1401, 1407 (7th Cir.1990) (discussing deferential standard of review for agency interpretation of statute it administers); *Wisconsin v. Bowen*, 797 F.2d 391, 397 (7th Cir.1986) (same), *cert. denied*, 485 U.S. 1017, 108 S.Ct. 1495, 99 L.Ed.2d 879 (1988).[3]

We have applied consistently these principles in other cases involving the EPA's interpretation of the statutes it administers. For instance, in *Wisconsin Power Co. v. Reilly*, 893 F.2d 901 (7th Cir.1990), this court was confronted with an EPA determination that a renovation would be

---

**2.** *See Gary Steel Supply v. Reagan*, 711 F.Supp. 471, 474 (N.D.Ill.1989); *Wagner Seed Co. v. Bush*, 709 F.Supp. 249, 250–51 (D.D.C.1989).

**3.** Bethlehem argues that the action in this case, which it terms an "interpretive ruling," is not accorded the same deference as called for by *Chevron*. In *Wisconsin v. Bowen*, the State of Wisconsin objected to the withholding of federal Medicare reimbursement based on a review of the state's performance. 797 F.2d at 393. The court recognized that "[a]n agency's interpretation of the statute it is charged to administer is 'entitled to a presumption of regularity,' and may not be disturbed unless it is 'arbitrary, capricious, or constitute[s] an abuse of discretion.' " *Id.* at 397 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). The court acknowledged that the interpretation of the Secretary was not to be given legislative effect because there had not been formal rulemaking, but the district court "was still bound to defer to his interpretation if reasonable and statutorily permissible." 797 F.2d at 397. *See Fort Stewart Schools v. Federal Labor Relations Auth.*, —— U.S. ——, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990); *see also Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 223, 106 S.Ct. 2860, 2862, 92 L.Ed.2d 166 (1986) (according deference to agency's decision not to

impose sanctions as it was authorized by statute); *United States v. City of Fulton*, 475 U.S. 657, 666, 106 S.Ct. 1422, 1427–28, 89 L.Ed.2d 661 (1986) (upholding under deferential review agency's formulation and implementation of hydroelectric power rates); *Guadamuz v. Bowen*, 859 F.2d 762, 768, 771 (9th Cir.1988) (applying *Chevron* deference where procedure was pursuant to an interpretive rule); *Midtech Paper Corp. v. United States*, 857 F.2d 1487, 1496–97 (D.C.Cir.1988) (in review of agency adjudication, court must accept agency's interpretation of statute if reasonable); *Theodus v. McLaughlin*, 852 F.2d 1380, 1382–84 (D.C.Cir.1988) (applying deferential *Chevron* review to decision by Department of Labor not to institute legal proceedings in union election protest); *N.Y. State Dep't of Social Servs. v. Bowen*, 835 F.2d 360, 361 (D.C.Cir.1987) (although statute subject to several interpretations, court accepted agency's interpretation as reasonable), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2820, 100 L.Ed.2d 922 (1988); *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565–67 (D.C.Cir.1984) (applying *Chevron* deference to an interpretive rule), *cert. denied*, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985); *Chrysler Corp. v. EPA*, 631 F.2d 865, 884 (D.C.Cir.) (according EPA's interpretation important significance), *cert. denied*, 449 U.S. 1021, 101 S.Ct. 589, 66 L.Ed.2d 483 (1980).

subject to the Clean Air Act. *Id.* at 906. The company contended that the EPA misconstrued the Clean Air Act and EPA regulations. *Id.* Judge Cudahy, writing for the court, began by explaining the standard of review to be applied. First, courts accord "substantial deference" to the EPA's interpretation of a statute it administers. *Id.* Second, courts must consider whether the agency's interpretation comports with the statute and Congress' intent. If the statute is ambiguous, then the court must determine if the agency's interpretation is a permissible construction of the statute. *Id.* at 907; *see also Inland Steel Co. v. EPA*, 901 F.2d 1419, 1424 (7th Cir.1990) (citing *Chevron*). In cases in which the agency played a significant role in the legislative process, there is even more reason for judicial deference. As the Supreme Court noted in *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers*, 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961):

> Particularly is this respect due when the administrative practice at stake "involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new."

*Id.* at 408, 81 S.Ct. at 1535 (quoting *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933)).

### 3.

Here, the district court correctly acknowledged its responsibility to give considerable deference to the agency responsible for the ambiguous statute in question. As *Power Reactor* teaches, such deference is especially appropriate here because it is clear that the EPA played a major role in the legislative process. *See* H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1, 120–43 (1985), U.S.Code Cong. & Admin.News 1986, pp. 2835, 2902–2925 (Statement of EPA Administrator and accompanying fact sheet). The court also recognized its duty to ensure that, given that deference, the agency's interpretation of the statutory mandate was a reasonable one. Here, the district court understandably found the evidence somewhat vague and perhaps even contradictory. Nevertheless, we are convinced that it evaluated properly all of the available evidence of congressional intent and correctly concluded that the interpretation of the EPA was reasonable. *See Fort Stewart*, 110 S.Ct. at 2046.

With respect to the legislative history, the court properly noted that the statement of Representative Eckhart, the sponsor of the bill that eventually became SARA, was helpful:

> This new provision is intended to provide incentives for parties to undertake the work required in the order, even if they have legal objections to performing the work. Thus, *effective after the date of enactment of these amendments, a party who receives an order can begin the work of environmental cleanup while preserving its right to raise objections in a subsequent proceeding.*

132 Cong.Rec. H9624 (daily ed. Oct. 8, 1986) (emphasis supplied). The court also recognized that the discussion on the importance of the section as an incentive for voluntary cleanups in the House and Senate reports was at least arguable support for the position of the EPA. The Senate Environment and Public Works Committee Report explains that the purpose of the reimbursement provision is to "increase the incentive for potentially responsible parties to undertake response actions." S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985). The House Energy and Commerce Report states that reimbursement provisions are "intended to foster compliance with orders and expeditious cleanup." H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1, at 139–40 (1985), U.S.Code Cong. & Admin.News 1986, p. 2921. These passages certainly lend support to the view that the provision ought not be applied to those who have already undertaken the cleanup because there is no need for an incentive. As the *Wagner Seed* court noted, a contrary argument is possible: "the purpose of the law could have been advanced by encouraging

those already cleaning up to complete the job thoroughly and without cutting corners." 709 F.Supp. at 251–52. However, it is certainly rational—and this must be our standard under *Chevron*—for the EPA to have interpreted the available evidence as it did.

The district court was also quite correct in determining that the EPA's position was supported by application of the general rule of statutory construction that a waiver of sovereign immunity must be strictly construed. As this court declared in *Harris v. Brock*, 835 F.2d 1190, 1193 (7th Cir.1987), courts "must strictly construe any conditions attached to the government's waiver of sovereign immunity." *See also Voluntary Purchasing Groups v. Reilly*, 889 F.2d 1380, 1385 (5th Cir.1989) (waivers of sovereign immunity strictly construed in favor of the government). Use of this rule of statutory construction[4] is particularly appropriate here because, as the district court recognized, the legislative history of SARA makes clear that Congress viewed this statute as "a specific independent waiver of sovereign immunity." H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1, at 83 (1985), U.S.Code Cong. & Admin.News 1986, p. 2865.[5] Consequently, we may assume that Congress intended that the usual rule of statutory construction regarding such a waiver would apply.

## Conclusion

When a court is obliged to go beyond the plain wording of a statute and enter "the black hole of legislative ambiguity,"[6] the congressional will is usually difficult to discern. In most cases, the available evidence yields only partial support and, at times, it is conflicting. This case fits that mold. Under these circumstances, the district court correctly identified its obligation to give deference to the agency charged with the administration of the statute and properly assured itself that the available evidence supported the reasonableness of the agency's decision. Accordingly, its judgment is affirmed.

AFFIRMED.

---

4. It must be emphasized that the EPA is not relying on sovereign immunity as a *defense*. Rather, it urges only that, as a matter of *statutory construction*, a legislative waiver of sovereign immunity be construed narrowly. Therefore, Bethlehem's argument that the district court erred because the Administrative Procedures Act waives sovereign immunity as a defense deserves no extended discussion.

5. We see no merit in Bethlehem's argument that the nature of the action (against the Superfund—a segregated account) precludes the application of the usual rule of construction regarding sovereign immunity. In *Schlafly v. Volpe*, 495 F.2d 273, 279–80 (7th Cir.1974), this court determined that a suit against the government to recover funds in the Highway Trust Fund *was* covered by the sovereign immunity doctrine. The court determined that, despite the fact that the money would come from a trust fund, a "judgment ... would expend itself on the public treasury or domain." *Id.* at 279 (quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947)); *see also Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (sovereign immunity triggered when judgment would "expend itself on the public treasury").

6. *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 142 (7th Cir.1990) (Ripple, J., dissenting).