CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREA PENSION
FUND, et al., Plaintiffs,

v.

Jeffrey FELDMAN, et al., Defendants.

No. 94 C 0385.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 30, 1994.

James Patrick Condon, Central States Law Dept., Rosemont, IL, David A. Sawyer, Russell N. Luplow, David Machnacki, Gregory Robert Schermerhorn, Russell N. Luplow, P.C., Bloomfield Hills, MI, for Central

---

**6.** The Petitioner's request for a court-appointed lawyer is moot because of today's ruling.

States, Southeast and Southwest Areas Pension Fund, Howard McDougall.

Richard G. Smolev, Jeffrey L. London, Craig T. Boggs, Angela Youngsun Im, Sachnoff & Weaver, Ltd., Chicago, IL, for Jeffrey Feldman, Sheldon Feldman, Benjamin Reiff.

Daniel E. Reidy, James A. White, Jones, Day, Reavis & Pogue, Chicago, IL, Thomas M. Gacse, Youngstown, OH, for Mahoning Nat. Bank.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("the Fund"), et al., sue Defendants Jeffrey Feldman, Sheldon Feldman and Benjamin Reiff ("the Individuals") and Mahoning National Bank of Ohio ("Mahoning") for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001, et seq. (1982). Specifically, the Fund alleges that the Defendants violated 29 U.S.C. § 1392(c), which prohibits employers from evading and avoiding liability to multi-employer pension funds. The Fund also alleges violations of several common law causes of action, including fraud upon creditors, civil conspiracy, constructive trust, improper corporate distributions, equitable subordination, and return of assets.

The Defendants filed three motions to dismiss: (1) Mahoning moved for dismissal under Fed.R.Civ.P. 12(b)(6), arguing, among other things, that the Fund's ERISA claim is time-barred; (2) Mahoning moved for dismissal under Fed.R.Civ.P. 12(b)(2), arguing that, if the ERISA claim is time-barred, we lack personal jurisdiction over Mahoning; and (3) the Individuals moved for dismissal under Fed.R.Civ.P. 12(b)(6), using arguments similar to Mahoning's, most notably echoing the ones about the time-bar and personal

jurisdiction.[1] For the reasons discussed below, we grant the Defendants' motions to dismiss.

## I. Background

The Fund is a multi-employer pension plan. Feldman Brothers Produce Co., Inc. ("Produce"), made contributions to the Fund on behalf of certain of its employees. The Individuals owned Produce at the time it began making those contributions. In February 1984, however, the Individuals arranged to sell to Jacob Frydman Co. ("Frydman") their stock in Produce and another entity, Joseph Feldman, Inc. ("Feldman"). In March 1984, having received a loan from Mahoning, Frydman purchased the stock. Frydman used Produce's assets as collateral for the loan.

In January 1985, Produce and Feldman ceased operations. They also withdrew from the multi-employer pension plan and incurred $493,529.09 in withdrawal liability. Frydman liquidated the companies' assets and, with them, partially repaid Mahoning's loan. Apparently, Frydman paid the Fund nothing.

On March 14, 1987, the Fund sent to Frydman, Produce, and Feldman ("the Controlled Group") a Notice and Demand for Payment of the withdrawal liability. The Controlled Group failed to pay. In July 1988, the Fund sent a Past Due Notice. In March 1990, the Fund sued the Controlled Group, and in February 1993, it obtained a judgment for $1,076,612.77. On January 21, 1994, the Fund brought the current action against the Individuals and Mahoning, hoping they could discharge the Controlled Group's liability.

## II. Standard of Review

In *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323 (7th Cir.1990), the court reaffirmed the well-known standard of review for motions to dismiss under Fed.R.Civ.P. 12(b)(6):

A party fails to state a claim upon which relief can be granted only if that party

---

1. The Individuals constructively moved for dismissal under Fed.R.Civ.P. 12(b)(2) as well. "This Court's only basis for personal jurisdiction over [the Individuals] is ERISA. If this Court dismisses the [ERISA] count, then there is no pendant jurisdiction over the federal common law counts. Neither the transaction nor [the Individuals] have any nexus to Illinois." Def.Br. at 4, n. 2.

"can prove no set of facts upon which relief may be granted." (citation omitted). We assume well-pleaded allegations are true and shall draw all reasonable inferences in the light most favorable to the plaintiff. *Id.* at 1326.

### III. Discussion

#### A. The Defendants' Motions Pursuant to 12(b)(6)

 The Defendants argue, among other things, that the Fund fails to state a claim upon which relief can be granted because its ERISA action is time-barred under 29 U.S.C. § 1451(f) ("§ 1451"), the applicable statute of limitations. Section 1451 provides:

An action under this section may not be brought after the later of—

(1) 6 years after the date on which the cause of action arose, or,

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

Whether the Fund's claim is time-barred depends on when its cause of action arose.

The Defendants argue that the key date is March 14, 1987, when the Fund sent the Notice and Demand for Payment. The Notice demonstrated knowledge of the withdrawal liability and constituted a demand for payment. *See* § 1451; 29 U.S.C. § 1399(c)(2) ("§ 1399(c)(2)")[2]. Because the Defendants failed to heed the demand, the 60–day grace period lapsed and, on May 13, 1987, the liability became overdue. *See* § 1399(c)(2). At that point, the Fund's cause of action arose and the statutory six years began to run, making the time-bar fall on May 14, 1993. Because the Fund did not bring this action until January 21, 1994, it is time-barred.

The Fund counters on two grounds. First, it argues that the key date is July 1988, when it sent the Past Due Notice. In order to understand the Fund's argument, we consider its interpretation of three ERISA provisions: (1) 29 U.S.C. 1401(b)(1) ("§ 1401(b)(1)"); (2) § 1399(c)(2); and (3) 29 U.S.C. 1399(c)(5) ("§ 1399(c)(5)"). Section 1401(b)(1) provides:

If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor.

Section 1399(c)(2) provides:

Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand....

Section 1399(c)(5) provides:

In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—

(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure....

The Fund argues that, because there was no arbitration proceeding, its only recourse was to sue for the entire amount of the Defendants' withdrawal liability and that amount was unknown until they defaulted on the payment schedule. The March 1987 letter satisfied § 1399(c)(2) by notifying the Defendants of their obligation to pay and providing them with a payment schedule. The July 1988 letter, however, satisfied the additional § 1399(c)(5) requirement by notifying them that they defaulted on the established schedule. The full amount of withdrawal liability was not due and owing until then, until it notified them about the default and accelerated their debt.

---

**2.** For a text of § 1399(c)(2), see below.

The Fund's first argument comes down to this: Its claim could not arise until it could sue for a sum certain that was due and owning and, because those criteria did not fall into place until after it mailed the July 1988 Notice, July 1988 should be the touchstone date. Playing this out, the six year statute of limitations began to run 60 days after July 1988, making the time-bar fall in September 1994. Because it brought the action in January 1994, it is not time-barred.

The Fund's second argument is that the Controlled Group fraudulently transferred assets to the Defendants, which made it difficult to bring a timely suit because the transfer hid the assets and, consequently, the Defendants. The Fund concludes that we should toll the running of the statute of limitations for an appropriate amount of time to compensate it for the difficulties it encountered discovering the location of the assets and the involvement of the Defendants.

In *Central States, Southeast and Southwest Areas Pension Fund v. Navco*, 3 F.3d 167, *reh'g denied*, (7th Cir. Sept. 20, 1993), *and cert. denied*, —— U.S. ——, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994), the Seventh Circuit visited a set of facts and arguments very similar to the ones in this case. *Navco* was a consolidation of two cases in which the plaintiffs sued an umbrella organization to recover the lingering MPPAA withdrawal liability of a couple of bankrupt companies. Once the umbrella organization proved to be "a dry well," the plaintiffs sued other people who they believed might be able to discharge the companies' liability. *Id.* at 169; *see* 29 U.S.C. § 1301(b)(1). Those "second-round defendants" raised the same § 1451(f) statute of limitations defense that the "second-round defendants" raise in this case.

In one of the cases consolidated on appeal, the employer withdrew from its obligations to the pension fund in early 1984. On April 6, 1984, the plaintiff sent a notice of withdrawal liability and demand for payment. On May 1, 1991, the plaintiff filed suit. In the other case consolidated on appeal, the employer also withdrew from its obligations to the pension fund in early 1984. On June 19, 1984, the plaintiff sent the employer a notice and demand for payment, specifying a schedule of payments. The employer did not abide by the schedule. On August 28, 1990, the plaintiff sent a letter to the employer's counsel, requesting information in preparation for suit. On March 13, 1992, the plaintiff filed suit.

The *Navco* court considered and rejected the Plaintiffs § 1451(f)(1) argument that its claim arose only after it accelerated the Defendants' debt pursuant to § 1399(c)(5). The court "h[e]ld that the claim accrues as soon as the payment is overdue." 3 F.3d at 172. "The pension fund ha[s] only one *claim* against the employer (and, derivatively, against the controlling persons): the amount of withdrawal liability." *Id.* Moreover, "the whole amount is presumptively due at the outset." *Id.* Then the court wrote:

> Suppose a pension fund, dissatisfied with our conclusion that it has "only" six years to track down members of control groups, decides to grant itself additional time. If each overdue payment starts a new six-year period, the pension fund could decelerate payment on default—say, converting from a two-year schedule ... to a twenty-year schedule. Extra time cannot harm the fund, given that an insolvent employer will not pay on any schedule. Then once it locates what it believes is a member of the control group, the fund may demand payment of the current installment and, when this is not forthcoming, accelerate all future payments under 1399(c)(5) and file suit. Clever, but it ought not work.

*Id.* We agree, and we do not allow it to work in this case.

The court found in both of the consolidated cases that the cause of action arose in 1984, which was when the defendants' payments became overdue, or, in other words, when the defendants incurred withdrawal liability, the plaintiffs sent their notice and demand for payment, and the 60-day grace period lapsed. The court added six years and determined that the time-bar fell in 1990. Because the plaintiffs brought their actions in May 1991 and later, they were time-barred.

In this case, the Defendants incurred withdrawal liability at some point between January 1985 and early 1987. Then, in March

1987, the Fund sent its Notice and Demand for Payment, which means that its cause of action arose 60 days later, in May. See § 1399(c)(2). That, in turn, means the time-bar fell in May 1993. The Fund, however, brought suit in January 1994. Therefore, its action is time-barred.

 The *Navco* court also considered and rejected the Fund's § 1451(f)(2) argument that we should prevent the time-bar's fall because the alleged fraudulent transfer hindered its ability to discover the location of the assets and the involvement of the Defendants. The court wrote: "Section 1451(f)(2) states a 'discovery' rule, and a claim accrues under a discovery rule when the victim knows of his injury. The time begins even though the victim does not know that the injury is actionable." *Id.* at 171. "If a claim accrues even though the victim does not know that he has a legal entitlement to recover, the fact that the victim does not know who would be the right defendant cannot matter." *Id.* "Statutes of limitations provide time within which a person who knows of an injury may conduct the investigation needed to learn whether he has a legal claim and, if so, who is liable." *Id.* The plaintiffs "chose not to investigate and may not now insist that their own diffidence meant that the time did not even commence." *Id.*

The court found that the plaintiffs discovered their cause of action in 1984, and the statute of limitations began to run at that point. Similarly, in this case, the Fund discovered its cause of action no later than March 1987, and the statute began to run at that point, or, rather, that point plus sixty days. Still, the Fund's action is time-barred.

The Fund did not mention *Navco* in its briefs [3], and, given the extent to which the Seventh Circuit's decision ravages its arguments, it appears the Fund believed it most efficacious to play ostrich. In so doing, however, it neglected to develop a potentially strong argument, one that emerged from *Navco* as § 1451(f)'s loophole: "Only the ap-

plication of a tolling rule could enable either pension plan to recover." *Id.* at 173.

At first, despite its "only the application . . ." language, the court appeared to discount the availability of a such a rule. It noted that Congress "split" the statute, proscribing specific time-bars based on the date of injury, the date of discovery, and the date of discovery in cases of fraud or concealment. "Provision in the statute for a defined extra time for fraud or concealment makes it problematic for judges to use [mild forms of concealment] as a reason to grant time *beyond* six years." *Id.* Moreover, it noted that "we must be careful not to use tolling principles to contradict the legislative decision that fraud and concealment justify six years from discovery, not more." *Id.*

Yet the court went on to state that "perhaps there is room for" extending the statute of limitations under the doctrines of equitable estoppel and equitable tolling. *Id.* at 174. In particular, "[e]quitable tolling . . . is potentially important in control group cases, because sometimes even six years will not be long enough to round up every last member." *Id.* If the plaintiffs are not diligent in their investigation, however, "equitable tolling hardly helps." *Id.*

In this case, the Fund is unable to take advantage of the *Navco* loophole. The doctrine of equitable estoppel is unavailable because the Fund plead no specific facts to support its allegation of fraudulent concealment, which allegation it raised for the first time in its briefs.[4] The doctrine of equitable tolling is unavailable because the Fund plead no specific facts to support its claim that it investigated diligently. The Fund appears to have done no more—in fact, it appears to have done less—than the plaintiffs in *Navco,* whose efforts the court found insufficient. *See Id.*

For the reasons discussed above, we hold that the Fund's ERISA action is time-barred, and we dismiss it under Fed.R.Civ.P. 12(b)(6).

---

**3.** The Fund did attempt to distinguish the facts of the cases *Navco* consolidated on appeal, but its attempts are unpersuasive given the Seventh Circuit's broad ruling.

**4.** In its complaint, the Fund alleges "fraud upon creditors," not fraudulent concealment.

### B. The Defendants' Motions under 12(b)(2)

The Defendants' argue that ERISA's nation-wide service of process provision is our only basis for personal jurisdiction over the parties. If the Fund loses ERISA, we lose jurisdiction. The Fund concedes this point. Pl.Br. at 2–3. Therefore, because we hold that the Fund's ERISA claim is time-barred, we also hold that we lack personal jurisdiction over the parties, and we dismiss the remaining counts under Fed.R.Civ.P. 12(b)(2).[5]

### IV. Conclusion

For the reasons discussed above, we grant the Defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6) and (2).

---

**5.** Although we dismiss the remaining counts for want of personal jurisdiction, those counts might very well be time-barred. The Defendants claim they are, and the Fund provides no basis for our believing otherwise. We note, however, that we do not rule on that ground.